JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED

2023 JAN -3  PM 3: 14

_____ DISTRICT COURT
_STERN DISTRICT OF TEXA_
BY _____
DEPUTY

| | |
|---|---|
| ERIK SALAIZ,<br><br>                 Plaintiff,<br><br>    v.<br><br>AMERICAN 1ST PARTNERS, INC<br>a California Corporation<br><br>               Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

EP23CV0002

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      Plaintiff ERIK SALAIZ is a natural person and is a citizen of the Western District of

Texas and was present in the Western District of Texas during all calls at issue in this case.

2.      Defendant AMERICAN 1ST PARTNERS, INC. ("AMERICAN" "Defendant") is a

corporation organized and existing under the laws of California and can be served via registered

agent Rafael Berrios at 1420 E. Edinger Avenue, Suite 220, Santa Ana, California 92705.

### NATURE OF ACTION

3.      As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . .. For

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am.*

*Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4.      Plaintiff Erik Salaiz ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant AMERICAN telemarketers and agents placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5.      Defendant AMERICAN offers mortgage loans and cash out options to consumers.  As part of marketing their services, Defendant AMERICAN hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.      This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.      This Court has personal jurisdiction over Defendant AMERICAN because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant AMERICAN regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.     Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

23.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS:

24.     Plaintiff successfully registered his personal cell phone number (XXX) XXX-1527 on the National Do-Not-Call Registry on March 6, 2022, which was more than 31 days prior to receiving the alleged calls.

25.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

26.     Defendant AMERICAN offers mortgage loan services to consumers.

27.     Defendant AMERICAN hires and authorizes telemarketers to make unauthorized phone calls to thousands of consumers *en masse* using an ATDS to solicit mortgage services on behalf of Defendant AMERICAN.

28.     Defendant AMERICAN approves of the contracts with these telemarketers.

29.     Defendant AMERICAN pays the telemarketers out of bank accounts they own and control.

30.     Defendant AMERICAN is well aware that the unauthorized phone calls being made on their behalf soliciting their mortgage loan and cash out products violate the TCPA.

31.     Defendant AMERICAN knowingly and willfully violate the TCPA because doing so benefits them financially when consumers get approved for their mortgage loans or cash out products.

32.     Plaintiff received at least five (5) unauthorized phone calls to his personal cell phone 1527 within a sixty-day period from telemarketers calling on behalf of Defendant AMERICAN soliciting their mortgage loan services ("the calls").

33.     The calls were made using an ATDS that has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator and to dial such numbers.

34.     With information and belief Plaintiff received more calls from or on behalf of Defendant AMERICAN within the past two years that are unknown to Plaintiff at this time but will be revealed during discovery.

6

35.    On July 11 and July 12, 2022, Plaintiff received two of multiple calls to his personal cell phone 1527 from a telemarketer named Ron Jones calling on behalf of Defendant AMERICAN.

36.    Plaintiff answered and there was a 3-4 second delay followed by an audible beep (indicating the calls were made using an ATDS) before being connected to Ron.

37.    Ron advised Plaintiff that he was calling from "VA mortgage network" and both times the calls dropped.

38.    Defendant AMERICAN trains their telemarketers not to reveal their true identity and say their calling from "VA mortgage network" in order to duck liability for violating the TCPA.

39.    On July 13, 2022, Plaintiff received another call from Ron.

40.    Plaintiff answered and there was a 3-4 second delay followed by an audible beep (indicating the call was made using an ATDS) before being connected to Ron.

41.    Ron did not ask for Plaintiff by name in any of the calls another indication the call was made using an ATDS and could have reached anyone in the US.

42.    Ron again advised Plaintiff he was calling from "VA mortgage network" and that the call was regarding Plaintiff's mortgage rate.

43.    Plaintiff was extremely annoyed and frustrated for continuing to receive the same phone calls from Ron soliciting mortgage refinance loans and cash out options and advised Ron that he was interested for the sole purpose of identifying the company responsible for the calls.

44.    Ron then asked Plaintiff qualifying questions about his mortgage interest rate, mortgage balance, monthly mortgage payment, mortgage value and credit score.

45.    Ron advised Plaintiff he was going to transfer Plaintiff to Ron's lender.

46.    Ron then transferred Plaintiff to a loan officer from Defendant AMERICAN named Ray Roman.

47.     Ray accepted the transfer from Ron which confirmed Defendant AMERICAN hires and authorizes telemarketers to make unauthorized telemarketing calls to consumers soliciting Defendant's mortgage loan services.

48.     With information and belief Defendant AMERICAN shares a portal or database with their telemarketers which allows the telemarketers to transfer potential client leads directly to Defendant AMERICAN's systems.

49.     Ray verified Plaintiff's mortgage information and solicited Plaintiff for a mortgage refinance and cash out option on behalf of Defendant AMERICAN.

50.     Plaintiff advised Ray that he was at work and couldn't talk and would call Ray back at a later time.

51.     Shortly after Plaintiff disconnected the call with Ray, Plaintiff received another call from another mortgage loan officer with Defendant AMERICAN NAMED Russell Rojas.

52.     Russell advised Plaintiff that Ray had passed Plaintiff's information to him regarding a mortgage cash out option.

53.     Plaintiff explained to Russell that he had just advised Ray that he was at work and would call them back at a later time.

54.     Russell verified Plaintiff's email and advised Plaintiff he would email his contact info.

55.     On July 19, 2022, Plaintiff received an email from Russell along with a text message advising Plaintiff he sent him an email.

56.     The email Plaintiff received from Russell revealed the company responsible for the calls. *See Exhibit A.*

57.     Plaintiff responded to the text message from Russell and stated "good morning I'm not interested at this time thank you. *See Exhibit B.*

58.     Despite Plaintiff's text message to Russell advising him that Plaintiff was not interested, on August 26, 2022, Plaintiff received another call from Ron Jones soliciting mortgage refinancing and cash out options on behalf of Defendant AMERICAN.

59.     Ron transferred Plaintiff to Russell who once again solicited Plaintiff for mortgage loan services on behalf of Defendant AMERICAN.

60.     Ron did not ask for Plaintiff directly at the beginning of the call another indication the call was made using an ATDS.

61.     Russell did not recall ever speaking with Plaintiff prior to this call or the fact that Plaintiff had already advised him that Plaintiff was not interested.

62.     Plaintiff has never had an established business relationship with Defendant AMERICAN and did not give his prior express written consent to receive any of the calls.

63.     Table A below summarizes the phone calls Plaintiff received from and/or on behalf of Defendant AMERICAN:

Table A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 07/11/2022 | 12:09 PM | 254-354-6966 | Ron Jones from VA mortgage network. Call dropped. |
| 2 | 07/12/2022 | 10:24 AM | 954-466-4894 | Ron Jones from VA mortgage network. Call dropped. |
| 3 | 07/13/2022 | 10:04 AM | 954-676-7605 | Ron Jones from VA mortgage network. Transferred to Ray Roman from American. |
| 4 | 07/13/2022 | 10:44 AM | 949-558-9000 | Call from Russell from American. He emailed info on 07/19. |
| 5 | 08/26/2022 | 10:08 AM | 470-942-7550 | Call from Ron Jones. Transferred to same rep Russell. |

64.     Defendant AMERICAN employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

65.     Defendant does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

66.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant AMERICAN registration.

67.     Defendant does not qualify for an exemption under § 302.053.

68.     The calls constituted "calls" under the TCPA that were not made for emergency purposes.

69.     Defendant AMERICAN and their agents and co-conspirators amassed lists of thousands of potential customers from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their mortgage refinance loans and cash out options.

70.     Defendant AMERICAN have knowledge of and have adopted and maintained TCPA violations as a sales strategy. Defendant AMERICAN knew full well that telemarketers are calling and harassing consumers in an attempt to procure business on behalf of the Defendant AMERICAN. Defendant AMERICAN willfully accepts these referrals and compensate the telemarketers for their illegal phone calls.

71.     Plaintiff sent an internal do-not-call policy request to Defendant AMERICAN on December 15, 2022, to email russell@american1stbankers.com which is an email owned and controlled by Russell Rojas who is Vice President of Sales with Defendant AMERICAN.

72.     Despite this e-mail, Defendant AMERICAN failed and/or refused to send Plaintiff a do-not-call policy.

73.     Upon information and belief, the Defendant AMERICAN did not have a written do-not-call policy while it was sending Plaintiff the calls.

74.     Upon information and belief, Defendant AMERICAN did not train their telemarketers who engaged in telemarketing on the existence and use of any do-not-call list.

75.     Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

76.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT AMERICAN

77.     Defendant AMERICAN is vicariously liable for the telemarketing calls that generated the lead on their behalf.

78.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

79.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

80.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

81.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

82.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

83.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

84.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

85.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

86.     Defendant AMERICAN is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

87.     Defendant AMERICAN knowingly and actively accepted business that originated through illegal telemarketing.

88.     Defendant AMERICAN knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

89.     By hiring a company to make calls on its behalf, Defendant AMERICAN "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

90.     Moreover, Defendant AMERICAN maintained interim control over the actions of its telemarketers.

91.     For example, Defendant AMERICAN had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

92.     Furthermore, Defendant AMERICAN had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant AMERICAN and the ability to require them to respect the National Do Not Call Registry.

93.     Defendant AMERICAN also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

94.     Defendant AMERICAN donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "mortgage refinance loans and cash out options" services in the abstract.

95.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

96.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

97.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

98.     Defendant AMERICAN's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant AMERICAN. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

99.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

100.   Defendant AMERICAN is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer.

## THE TEXAS BUSINESS AND COMMERCE CODE § 305.053

101.   The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

102.   The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

103.   The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

104.   Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

98.   Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing illegal telemarketing phone calls.

99.    Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

100.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant AMERICAN.

101.    Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

102..    The calls were to the Plaintiff's cellular phone 1527, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

### COUNT ONE:
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent**

103.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104.    Defendant AMERICAN and/or their affiliates or agents violated the TCPA, 47 U.S.C. §
227(b)(1)(A)(iii), at least four (4) times by placing non-emergency telemarketing calls to
Plaintiff's cellular telephone number using an automatic telephone dialing system without prior
express written consent.

105.    Plaintiff was statutorily damaged at least four (4) time under 47 U.S.C. § 227(b)(3)(B) by
Defendant AMERICAN by the telephone calls described above, in the amount of $500.00 per
call.

106.    Plaintiff was further statutorily damaged because Defendant AMERICAN willfully or
knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the
damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every
willful and/or knowing violation.

107.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendant
AMERICAN and their affiliates and agents from violating the TCPA, 47 U.S.C. §
227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone
number using an ATDS and/or without prior express written consent.

**COUNT TWO:**
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. §**
**64.1200(C))**

108.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the
preceding paragraphs.

109.    Defendant AMERICAN called Plaintiff's private residential telephone number which
was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days

17

prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

110.     Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendant AMERICAN by the telemarketing calls described above, in the amount of $500.00 per call.

111.     Plaintiff was further statutorily damaged because Defendant AMERICAN willfully and/or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

112.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

113.     Plaintiff incorporates the forgoing allegations as if fully set forth herein.

114.     The foregoing acts and omissions of Defendant AMERICAN and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

> a.   A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [2];

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

     b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

     c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

115.  Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

116.  Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

117.  Plaintiff incorporates the foregoing allegations as if set forth herein.

118.  The foregoing acts and omissions of Defendant AMERICAN and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

119.  Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

120.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

## COUNT FIVE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

121.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

122.    Defendant made at least five (5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.    As a result of Defendant's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

124.    As a result of Defendant's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendant violates the TCPA;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for four (4) calls.

E.    An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for five (5) calls.

F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for five (5) calls.

G.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.    An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity.

I.    Such further relief as the Court deems necessary, just, and proper.

January 3, 2023,                                    Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com

Gmail - Salaiz Refinance- American 1st

 Gmail

Erik Salaiz <salaiz.ep@gmail.com>

## Salaiz Refinance- American 1st
1 message

**Russell Rojas** <russell@american1stbankers.com>
To: salaiz.ep@gmail.com

Tue, Jul 19, 2022 at 11:31 AM

Erik,

Below I am attaching a link to our company website and you can also see our reviews on Google and you will see recent ones of myself aswell , I look forward to being able to assist you with your mortgage goals now and in the future for anything you need
Once we go over your goals and options I will ask for the necessary simple documents we will need to get you in process.

http://american1stca.com/

Blessings,

--
**Russell Rojas**
Vice President of Sales | Mortgage Loan Officer

NMLS#: 2071709
EMAIL: russell@american1stbankers.com

 AMERICAN 1ST

**American 1st Partners**
18010 Sky Park Circle #205
Irvine, Ca 92614
**OFFICE:** (949)546-6804 |**CELL:** (949)558-9000 | **FAX:** (866)560-3446
Company NMLS #: 1772303

# Exhibit A

1:02 ✓                                    🔋 📶 89% ▪

<    **+1 949-558-9000** ∨     ⋮

Tuesday, July 19

**Good morning Eric I just sent you an email if you can please confirm that you were able to receive it this time.** 11:32 AM

11:33 AM   Good Morning I'm not interested at this time Thank you

**I think there was a miscommunication with who was going to assist you if you can let me know when the best time to schedule a call today or tomorrow so we can go over your options and goals.**

**Okay understood thank you let us know if you have questions in the future** 11:33 AM

Friday, August 26

**Russell with American Bankers** 👆 10:21 AM

**What's the best email for you Eric?** 1:57 PM

3:35 PM   Salaiz.ep@gmail.com

Wednesday, August 31

**Good morning Eric. It's Russell again with American 1st Bankers. I wanted**

🖼️    📷    +    |        ☺   〰️

|||       ◯       ‹

# Exhibit B